UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

RUTH AYRES,

                        Plaintiff,                        Docket No. 08-CV-04780 (BSJ)(KNF)

       -against-                                  COMPLAINT

COMPANY C COMMUNICATIONS, LLC,          **ECF CASE**

                       Defendant.

-------------------------------------------------------------------X

       Plaintiff, Ruth Ayres ("Ayres" and/or "Plaintiff"), by her attorneys, Gilbride, Tusa, Last & Spellane LLC, as and for her Complaint herein, alleges:

Parties and Jurisdiction

       1.      At all times relevant hereto, Plaintiff was a citizen of the State of Connecticut residing in Norwalk, Connecticut.

       2.      Upon information and belief, Defendant, Company C Communication, LLC ("Defendant" or "Company C"), is a Delaware limited liability company with a principal place of business at 411 Lafayette Street, New York, New York.

       3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a) as the parties are citizens of different states and the amount in controversy exceeds $75,000.

       4.      This Court has personal jurisdiction over Defendant as it transacts business and has its principal office in New York, New York.

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a).

AS AND FOR A FIRST CLAIM FOR RELIEF

6.      On or about November 5, 2007, Plaintiff was hired by MDC Partners, Inc. ("MDC"), an entity which, upon information and belief, owns and/or controls Defendant, to serve as a consultant to its subsidiary, the Defendant.

7.      Among the responsibilities given to Plaintiff while a consultant to MDC was to evaluate the operations of Company C and to assist Defendant in pitching new business to Weight Watchers.

8.      On or about December 6, 2007, at a breakfast meeting at the St. Regis Hotel in New York with Niles Nadal, the chairman and chief executive officer of MDC, and in the presence of Gavin Swartzman, a managing director of MDC, Mr. Nadal asked Plaintiff whether in her opinion Mr. Nocca was competent to run Company C.

9.      On more than one subsequent occasion, Mr. Swartzman asked Plaintiff to participate in management decisions at Company C that were beyond the scope of her consulting assignment.  Mr. Swartzman told Plaintiff that the reason for his request was that although he did not have confidence that Mr. Nocca was competent to run Company C, he wanted Plaintiff to work with Mr. Nocca so as not to put the Capital One business account at risk.

10.     Pursuant to such instructions, Plaintiff, while acting as a consultant for MDC, utilized her years of experience in the advertising industry to assist Mr. Nocca in the operation of Company C.

11.     On or about December 21, 2007, MDC entered into a second consulting agreement with Plaintiff to extend the period of her consulting through March 31, 2008.

12. On or about March 18, 2008, Company C made a written offer of employment to Plaintiff for the position of managing director of Company C.

13. In response to Plaintiff's request, on or about March 25, 2008, Plaintiff received an amended written offer of employment by Company C, pursuant to the terms of which she commenced working as a full time employee of Company C on April 1, 2008 ("Employment Agreement").

14. The Employment Agreement provided that it was for an initial term from April 1, 2008 through December 31, 2008 at an annual salary of $276,000 for Plaintiff to serve as a managing director of Defendant. In addition, Plaintiff was to be a participant in an incentive compensation program, have 20 days annual paid vacation and receive other benefits paid by Defendant, including medical, dental and life insurance.

15. Plaintiff commenced work pursuant to the Employment Agreement on April 1, 2008.

16. On or about April 10, 2008, Mr. Nocca advised Plaintiff that he was rescinding her offer of employment and that she would be receiving a letter to that effect.

17. Plaintiff asked Mr. Nocca to reconsider his actions as there was no basis for Defendant to be displeased with Plaintiff's job performance. Mr. Nocca responded that they might salvage the relationship if she would forego her Employment Agreement rights and sign a new employment contract that would change her to an at will employee rather than a contract employee for a fixed term. Plaintiff did not consent.

18. After such meeting, with the full knowledge and consent of Mr. Nocca, Plaintiff continued to work on her assignments for Company C.

19. On April 11, 2008, Plaintiff received a letter dated April 10, 2008 to her from Mitchell Gendel, who signed the letter as general counsel of MDC. The letter stated that Company C had rescinded its offer of employment dated March 25, 2008 and purported to do so because of allegedly derogatory comments Plaintiff purportedly made about Company C at a company meeting.

20. Plaintiff reported for work and performed an eight hour work day on Friday, April 11, 2008 and, with the knowledge and consent of Mr. Nocca, reported for work on Monday, April 14, 2008.

21. On April 14, 2008, Mr. Nocca advised Plaintiff that he preferred that she not attend a management meeting that morning, but that he wanted her to attend a meeting pitching new business for Defendant to Virgin Atlantic.

22. Plaintiff did as instructed and thereafter worked in the office until approximately 9:00 p.m. collaborating with the team putting together a proposal for Virgin Atlantic. At such time, Mr. Nocca entered Plaintiff's office and said that it pained him to tell her that this was her last day at Company C.

23. At no time while employed by Company C did Plaintiff, by action or inaction, provide Company C with any cause for Defendant to breach the Employment Agreement and to terminate her as managing director of Defendant.

24. As a result of the foregoing, Defendant breached the Employment Agreement.

25. Subsequently, Defendant has failed and refused to pay Plaintiff the compensation to which she is entitled under the Employment Agreement and has failed and refused to pay the premiums for her insurance.

26. As a result of the foregoing, Plaintiff has been damaged in an amount not yet ascertained, but believed to be not less than $195,500 in salary and the as yet unknown costs of not receiving the benefits that were part of her compensation package.

WHEREFORE, Plaintiff, Ruth Ayres, demands judgment herein on her first claim for relief, in an amount in excess of $195,500.00, together with her costs, disbursements and reasonable attorney's fees, and such other relief as this Court deems just and proper.

Dated:   New York, New York
         May 20, 2008

                GILBRIDE, TUSA, LAST & SPELLANE LLC

                By: */s/ Bennett H. Last*
                     Bennett H. Last (BL7607)
                Attorneys for Plaintiff
                708 Third Avenue, 26th Floor
                New York, New York 10017
                Telephone: (212) 692-9666
                Email: bhl@gtlsny.com